UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:

                                             Chapter 7

Homa Monassebian,

                                             Case No. 1-21-41251-nhl

                          Debtor.
-------------------------------------------------------X
Bijan Monassebian,

                         Plaintiff,

    v.                                       Adv. Pro. No. 1-21-01162-nhl

Homa Monassebian,

                        Defendant.
-------------------------------------------------------X

**DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

APPEARANCES:

| | |
|---|---|
| Thomas J. Frank, Esq. | Alan Stein, Esq. |
| The Frank Law Firm P.C. | 7600 Jericho Turnpike |
| 333 Glen Head Road | Suite 308 |
| Suite 145 | Woodbury, NY 11797 |
| Old Brookville, NY 11545 | Attorney for the Defendant |
| Attorney for the Plaintiff | |

NANCY HERSHEY LORD
United States Bankruptcy Judge

This matter comes before the Court on the motion of Homa Monassebian (the "Defendant") and the cross-motion of Bijan Monassebian (the "Plaintiff") for summary judgment in the Plaintiff's adversary proceeding seeking to declare debt owed to him by the Defendant nondischargeable under Section 523(a)(15) of the Bankruptcy Code.[1] Section 523(a)(15) excepts from discharge non-support obligations incurred in the course of, or in connection with, a divorce or separation. The question before the Court is whether the exception applies to a judgment for damages entered against an ex-spouse for breach of a stipulation resolving the parties' divorce proceeding. For the following reasons, this Court finds that, even though the judgment is "one step removed" from the divorce proceeding, the debt falls within the exception because the judgment stems from the terms of the stipulation.

JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

BACKGROUND

Unless otherwise noted, the relevant material facts are undisputed or are matters of which judicial notice may be taken.

The Plaintiff is the former spouse of the Defendant. (Defendant's Statement Pursuant to Local Rule 7056-1 (the "Def. 7056-1 Statement") ¶ 1, Adv. ECF 5-2; Plaintiff's Response (the

---

[1] Unless noted otherwise, all statutory references in this Memorandum Opinion are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

1

"Pl. 7056-1 Response") ¶ 1, Adv. ECF 9-15.) [2] The parties were first married in 1969, divorced in 2000, and remarried in 2001. (Def. 7056-1 Statement ¶ 2; Pl. 7056-1 Response ¶ 2.) In 2009, the Defendant filed for a second divorce (the "Divorce Action"). (*Id.*)

Shortly before the 2009 divorce, in October 2009, the parties jointly agreed, *inter alia*, to gift an apartment owned by them, 301 East 79th Street, Condominium Unit PH-R, New York, NY (the "Continental Apartment"), to their daughter, Deborah Monassebian. (Affidavit of Bijan Monassebian (the "Bijan Aff.") Ex. G, at 2, Adv. ECF 9-9.) However, at the time the Divorce Action was commenced, the anticipated transfer of the Continental Apartment to Deborah had not been finalized. (*Id.*)

The Divorce Action was pending for several years. On August 10, 2013, the parties entered into a Stipulation of Settlement (the "Stipulation") thereby resolving the Divorce Action and settling certain other marital disputes. (Def. 7056-1 Statement ¶ 3; Pl. 7056-1 Response ¶ 3; *see also* Bijan Aff. Ex. A, Adv. ECF 9-3.) In the Stipulation, the parties acknowledged Deborah's possible claim of ownership of the Continental Apartment and agreed to sell the property upon receipt of a general release from her. (*See* Bijan Aff. Ex. A, at § 4.10(C)2.) The parties also agreed, among other things, to indemnify each other on an equal basis for the cost of defending any claim asserted by Deborah against either party with respect to the transfer of the Continental Apartment. (Def. 7056-1 Statement ¶ 4; Pl. 7056-1 Response ¶ 4; *see also* Bijan Aff. Ex. A, at § 7.4.) Importantly, Section 7.4 of the Stipulation provided that neither party would assist, finance, or encourage Deborah in commencing litigation to obtain title to the Continental Apartment. (Bijan Aff. Ex. A, at § 7.4.) Additionally, Section 14.2 of the Stipulation provided for reimbursement of attorney's fees and legal expenses in connection with any legal action seeking enforcement or

---

[2] Citations to "ECF []" are to documents filed in Case No. 21-41251-NHL, identified by docket entry number. Citations to "Adv. ECF []" are to documents filed in Adv. Pro. No. 21-01162-NHL, identified by docket entry number.

other remedy for a breach of the Stipulation, to be paid to the aggrieved party by the breaching party. (Bijan Aff. Ex. A, at § 14.2.)

The Divorce Action ultimately concluded with the entry of a Judgment of Divorce on April 1, 2014 (the "Judgment of Divorce"). (Bijan Aff. Ex. B, Adv. ECF 9-4.) The Stipulation was incorporated, but not merged, in the Judgment of Divorce,[3] and the parties were "directed to comply with every legally enforceable term and provision of the [Stipulation], as if such term or provision were set forth in its entirety [in the Judgment of Divorce]." (*Id.* at 2.)

Shortly after the entry of the Judgment of Divorce, the Defendant commenced an action (the "State Court Action") in the New York Supreme Court, Nassau County (the "State Court") seeking to set aside the Stipulation. (Def. 7056-1 Statement ¶ 5; Pl. 7056-1 Response ¶ 5.) The Plaintiff, in turn, counterclaimed, alleging that the Defendant violated the Stipulation by assisting Deborah in a lawsuit against both parties in which she sought title to the Continental Apartment. (Def. 7056-1 Statement ¶ 6; Pl. 7056-1 Response ¶ 6.) Subsequently, the Defendant's action was dismissed except for the Plaintiff's counterclaim and, after an unsuccessful attempt to settle and the Defendant's then-attorney being relieved as counsel, the State Court held a trial. (Def. 7056-1 Statement ¶ 7; Pl. 7056-1 Response ¶ 7; *see also* Bijan Aff. Ex. G, at 1.)

On March 5, 2021, the State Court entered a decision after trial (Def. 7056-1 Statement ¶ 8; Pl. 7056-1 Response ¶ 8; *see also* Bijan Aff. Ex. G, Adv. ECF 9-9 (the "Decision After Trial")) finding, by a preponderance of the evidence, that the Defendant breached the Stipulation by locating and paying for Deborah's attorney, who then commenced an action against the Plaintiff

---

[3] Under New York law, "[a]n agreement or stipulation that does not specifically provide for survival beyond a final judgment is merged with that judgment and, as a result, 'retains no contractual significance.'" § 25:9. Merger of agreement into divorce judgment, 12 N.Y. Prac., New York Law of Domestic Relations § 25:9 (quoting *Minarovich v. Sobala*, 504 N.Y.S. 2d 143, 144 (N.Y. App. Div. 1986)). On the other hand, if the agreement was incorporated but not merged into the final divorce judgment and a breach occurs, the aggrieved party can either bring a contempt action or commence a separate action for breach of contract. *See* § 7:10. Incorporation or merger, 11 N.Y. Prac., New York Law of Domestic Relations § 7:10.

and the Defendant ("Deborah's Action"). (Decision After Trial, at 4.) Accordingly, based on the terms of the Stipulation, the State Court awarded the Plaintiff damages "for breach of contract" in the amount of $509,404.00, together with interest and costs, consisting of (1) half of the difference in the payoff amount on the mortgage on the Continental Apartment, which resulted from the delay in selling the apartment due to Deborah's Action; and (2) the Plaintiff's various legal fees in connection with Deborah's Action and the State Court Action. (Decision After Trial, at 4-5; *see also* Def. 7056-1 Statement ¶ 8; Pl. 7056-1 Response ¶ 8.) Thereafter, on April 14, 2021, the State Court entered a judgment against the Defendant in favor of the Plaintiff in the amount of $515,430.26 (the "Judgment"). (Bijan Aff. Ex. H, Adv. ECF 9-10.) The Defendant did not appeal from the Judgment. (Tr. of May 31, 2022 Hr'g, 3:3–5, 6:16–19, Adv. ECF 14.)

On May 7, 2021, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, commencing Case No. 1-21-41251-nhl. (ECF 1.) On July 28, 2021, the Chapter 7 trustee issued a report of no distribution and, on August 11, 2021, the Court entered an Order of Discharge pursuant to Section 727(a). (ECF 21.) A few days prior, on August 8, 2021, the Plaintiff timely commenced this adversary proceeding seeking a determination that the Judgment is nondischargeable under Section 523(a)(15) of the Bankruptcy Code. The Defendant filed an answer and subsequently moved for summary judgment, arguing that the Plaintiff has not shown his inability to pay his own attorneys' fees and that the debt is "too far removed" from the Divorce Action to be within the scope of the statute, thus rendering this debt dischargeable. (Defendant's Memorandum of Law (the "Def. Mem."), at 4, Adv. ECF 5-1.) The Plaintiff, in turn, filed a cross-motion for summary judgment, in which he contends that the parties' financial abilities are irrelevant under Section 523(a)(15) and argues that the debt fits squarely within the elements of the statute. (Plaintiff's Memorandum of Law (the "Pl. Mem."), at 8-9, Adv. ECF 9-1.) Thereafter,

4

the Defendant filed a reply, maintaining that the Plaintiff failed to show facts connecting the debt at issue to those debts covered by Section 523(a)(15). (Def's Mem. of Law in Reply, at 1-2, Adv. ECF 12.) On May 31, 2022, the Court heard oral argument on the motion and the cross-motion and took both matters under submission.

## LEGAL STANDARD

*Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In ruling on a motion for summary judgment, a court looks to "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," *Celotex*, 477 U.S. at 322 (quoting Fed. R. Civ. P. 56(c)), and reviews the evidence in the light most favorable to the non-moving party, with all inferences drawn in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

While the initial burden is on the movant to demonstrate the absence of a genuine dispute of material fact with particular citations to the record, *Celotex*, 477 U.S. at 323; *Marvel*, 310 F.3d at 286, the non-moving party cannot defeat summary judgment by merely casting doubt on some of

these facts. *See Kulak*, 88 F.3d at 71. The non-moving party must point to disputed facts whose determination would affect the outcome of the case such that a reasonable trier of the fact could find in favor of that party. *Anderson*, 477 U.S. at 247–48; *Matsushita*, 475 U.S. at 586–87.

When dealing with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Braga Filho v. Interaudi Bank*, No. 03 CIV. 4795 (SAS), 2008 WL 1752693, at *3 (S.D.N.Y. Apr. 16, 2008) *aff'd sub nom. Filho v. Interaudi Bank*, 334 Fed. App'x 381 (2d Cir. 2009) (citing Wright, Miller, and Kane, *Federal Practice & Procedure* § 2720). The court must examine each party's motion on its own merits, and all reasonable inferences must be drawn against the party whose motion is under consideration. *Chandok v. Klessig*, 632 F.3d 803, 812 (2d Cir. 2011).

<u>Standard Under Section 523(a)(15)</u>

Section 523(a)(15) of the Bankruptcy Code provides that a discharge under the Bankruptcy Code does not discharge an individual debtor from any debt—

> to a spouse, former spouse, or child of the debtor and not of the kind described in [Section 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

11 U.S.C. § 523(a)(15).

For a debt to be determined nondischargeable under Section 523(a)(15), the debt: (1) must "be to a spouse, former spouse, or child of the debtor"; (2) must "not be the type described in section 523(a)(5), i.e., not a domestic support obligation"; and (3) must "have been incurred in the course of divorce or separation in connection with a separation agreement, divorce decree, or other order of a court." *In re Conte*, No. 11-77836-AST, 2012 WL 4739339, at *8 (Bankr. E.D.N.Y.

Oct. 3, 2012) (quoting *Schweitzer v. Schweitzer (In re Schweitzer)*, 370 B.R. 145, 150 (Bankr. S.D. Ohio 2007)). The burden of proof on the issue of nondischargeability is on the Plaintiff, and each element of the Section 523(a)(15) claim must be proven by a preponderance of the evidence. *Schweitzer*, 370 B.R. at 150 (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)).

Typically, "exceptions to discharge [are construed] narrowly, and in favor of the debtor." *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 127 (Bankr. E.D.N.Y. 2007) (citing *Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000)). However, despite the "fresh start" consideration being the bedrock of Chapter 7 cases, courts construe Section 523(a)(15) more liberally than other Section 523 exceptions "to encourage payment of familial obligations rather than to give a debtor a fresh financial start." *Hanson v. Brown (In re Brown)*, 541 B.R. 906, 911 (Bankr. M.D. Fla. 2015) (citing cases).

## DISCUSSION

The parties do not dispute that the first two elements of Section 523(a)(15) are satisfied. (*See* Pl. Mem., at 9; *see also* Def. Mem., at 4.) The Judgment was entered in favor of the Plaintiff against the Defendant, who is the Plaintiff's ex-spouse, thereby satisfying the first element. The debt is not a domestic support obligation, as the term is defined by the Bankruptcy Code, because it is not "in the nature of alimony, maintenance, or support … of such spouse, former spouse, or child of the debtor or such child's parent." *See* 11 U.S.C. § 101(14A)(B). Rather, the debt is for damages awarded to the Plaintiff for the Defendant's breach of the Stipulation based on the Stipulation's indemnification and fee-shifting provisions. (*See* Bijan Aff. Ex. G, at 5 ("[Plaintiff] is hereby awarded damages for breach of contract… .").)

The parties, however, are fundamentally at odds about their interpretation of the third element and, consequently, disagree on whether this element is satisfied. Since no material fact in

7

this case is in dispute,[4] the resolution of this adversary proceeding turns on the interpretation of the relevant statute and determination of the scope of its applicability, which is a question of federal law. *See Francis v. Wallace (In re Francis)*, 505 B.R. 914, 918 (B.A.P. 9th Cir. 2014) (citation omitted) (holding that although consideration of nondischargeability issues under Section 523(a)(15) "is informed by state law, [the] interpretation of § 523(a)(15) is fundamentally a question of federal law").

As noted above, Section 523(a)(15) excepts from discharge certain debts "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record." 11 U.S.C. § 523(a)(15). Prior to the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, Section 523(a)(15) provided a debtor with statutory defenses based upon "(1) whether the debtor ha[d] the ability to pay a debt relating to such obligation or (2) whether discharging such debt would result in a benefit to the debtor that would outweigh the detrimental consequences to the former spouse or child of the debtor." *Gilman v. Golio (In re Golio)*, 393 B.R. 56, 61 (Bankr. E.D.N.Y. 2008). BAPCPA, however, eliminated this so-called "balancing test," making the debts encompassed by the statute unqualifiedly nondischargeable, without regard to the financial needs or abilities of the debtor and non-debtor parties. *See Campagna Johnson Mady, P.C. v. Kalsi (In re Kalsi)*, 631 B.R. 369, 373 (Bankr. S.D.N.Y. 2021) (citing 4 COLLIER ON BANKRUPTCY ¶ 523.11[1]).

Elimination of the balancing test reflects "Congress's strong policy in favor of protecting ex-spouses and children" and the intent "to cover any matrimonial debts that 'should not justifiably be discharged.'" *Berse v. Langman (In re Langman)*, 465 B.R. 395, 405 (Bankr. D.N.J. 2012)

---

[4] Indeed, the Defendant acknowledges that this adversary proceeding does not require discovery and that if her summary judgment motion is denied, summary judgment would be appropriate against her. *See* Def. Mem., at 5.

(quoting *LaVergne v. LaVergne (In re LaVergne)*, Bankr. No. 10-35898, Adv. No. 10-2557, 2011 WL 1878093, at *3 (Bankr. D.N.J. May 17, 2011)). Consequently, courts give Section 523(a)(15) "the full reach implicated by its plain language." *Gamble v. Gamble (In re Gamble)*, 143 F.3d 223, 225 (5th Cir. 1998); *see also In re Francis*, 505 B.R. at 919 (collecting cases). Section 523(a)(15), therefore, makes entirely nondischargeable "debts running between spouses or ex-spouses that were created under divorce decrees, decrees of separate maintenance, or any other court judgment that parses out the consequences of the breakdown of a marital relationship." *Lakeman v. Weed (In re Weed)*, 479 B.R. 533, 538-39 (Bankr. D. Minn. 2012).

With these policy considerations in mind, the Court now turns to the parties' contentions.

The Defendant's argument essentially boils down to two points. First, the Defendant submits that the debt is "too far removed" from the scope of Section 523(a)(15) and should be discharged because the intent of the statute is "to ensure the payment of alimony and other obligations arising from a divorce degree or separation agreement" rather than render breach of contract debts nondischargeable based on the contract's indemnification provisions. (*See* Def. Mem., at 4.) Second, in the Defendant's view, the financial circumstances of both parties should be considered in determining whether the award of attorney's fees is dischargeable. (*Id.*)

The Defendant's second argument can be disposed of quickly because it is based on a mistake of law. As noted above, the resolution of a Section 523(a)(15) claim is no longer dependent upon the parties' relative financial needs and abilities. Thus, to the extent the Defendant argues that the Plaintiff's failure to show his inability to pay his own counsel fees warrants summary judgment in the Defendant's favor, such argument must be rejected because it is irrelevant to a claim under Section 523(a)(15). *See Tarone v. Tarone (In re Tarone)*, 434 B.R. 41, 48 (Bankr. E.D.N.Y. 2010) ("[U]nder BAPCPA, all debts owed to a spouse, former spouse, or child of a

9

debtor are nondischargeable if incurred in the course of a divorce proceeding, notwithstanding the debtor's ability to pay the debt or the relative benefits and detriments to the parties.").

In fact, review of the cases cited by the Defendant in support of this argument reveal that the Defendant conflates the requirements of Section 523(a)(15) with those of Section 523(a)(5), which deals with nondischargeability of domestic support obligations. *See Galati v. Navarrete (In re Galati)*, Bankr. No. 8-14-73159-LAS, Adv. No. 8-14-08288-LAS, 2018 WL 2997017 (Bankr. E.D.N.Y. June 12, 2018); *In re Rogowski*, 462 B.R. 435 (Bankr. E.D.N.Y. 2011); and *Gorelik v. Gorelik (In re Gorelik)*, No. 06 CIV. 08162 (SCR), No. 06 Civ. 09376 (SCR), 2010 WL 11530553 (S.D.N.Y. Mar. 30, 2010), *aff'd* 443 F. App'x 586 (2d Cir. 2011). In those cases, the courts looked at the parties' financial circumstances while assessing the dischargeability of attorneys' fees awarded as part of domestic relations cases, solely to determine whether those fees fell within the Bankruptcy Code's definition of "domestic support obligations" as being in the nature of alimony, maintenance, or support. Here, both parties agree that the subject debt is not a domestic support obligation, and the case law supports this proposition because the applicable clauses of the Stipulation "were intended to incentivize the performance by the parties under the [s]ettlement rather than to provide support." *Grinspan v. Grinspan (In re Grinspan)*, 597 B.R. 725, 740 (Bankr. E.D.N.Y. 2019). Thus, the above-referenced cases cited by the Defendant are inapplicable to the issue at bar.

This leaves the Court with the Defendant's argument that the Judgment is "too far removed" from the scope of Section 523(a)(15). In essence, the Defendant argues that the Judgment was for a breach of contract and has replaced the original obligations imposed during the Divorce Action. The Court disagrees.

First, the Defendant improperly elevates form over substance. *See, e.g.*, *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 9 (2d Cir. 1981) (holding that a "well-established principle of bankruptcy law [is] that dischargeability must be determined by the substance of the liability rather than its form"); *see also Golio*, 393 B.R. at 63 (post-BAPCPA case quoting *Spong*). The debt owed to the Plaintiff did not automatically become dischargeable simply because it is one step removed from the Stipulation and took the form of a judgment for breach of contract, as characterized by the Decision After Trial. The Judgment does not exist in a vacuum, and the mere fact of its entry does not preclude the Court from looking at the underlying Stipulation, which created the obligations that gave rise to the Judgment. In other words, it was the Stipulation that created the nondischargeable obligation; the Judgment merely liquidated it.

Indeed, the Supreme Court addressed a somewhat similar argument in *Archer v. Warner*, 538 U.S. 314 (2003), in the context of the "fraud" exception under Section 523(a)(2)(A). In *Archer*, two parties settled an alleged fraud claim, with releases and without admission of wrongdoing. *Archer*, 538 U.S. at 317. As part of the settlement, the debtor agreed to pay cash and sign a promissory note. *Id.* Subsequently, the debtor failed to make the promised payments, and the obligee sued. *Id.* at 317-18. After the debtor filed for bankruptcy, the obligee brought an action seeking to exclude the settlement debt from discharge under the "fraud" exception. *Id.* at 318. In rejecting the lower courts' holding that the debt did not fall within the exception because the settlement worked a kind of "novation," the Supreme Court, relying on *Brown v. Felsen*, 442 U.S. 127 (1979), held that a debt for money promised in the settlement accompanied by the release of the underlying claims can nonetheless amount to a debt for money obtained by fraud for the purposes of Section 523(a)(2)(A). *Id.* at 320. The Court concluded that courts may look behind the settlement, and "the mere fact that a conscientious creditor has previously reduced his claim to

11

judgment should not bar further inquiry into the true nature of the debt." *Id.* at 320-21 (quoting *Brown*, 442 U.S. at 290); *see also Kolomiitchenko v. Dolan (In re Dolan)*, Bankr. No. 05-15683-JMD, Adv. No. 05-1211-JMD, 2006 WL 3453678, at *4 (Bankr. D.N.H. Nov. 28, 2006) (finding, relying on *Archer*, that a promissory note "executed to liquidate and establish the terms of the [d]ebtor's payment of his obligations" under a divorce decree "did not change the nature of the debt for dischargeability purposes"); *Giaimo v. Detrano (In re Detrano)*, 266 B.R. 282, 286 (E.D.N.Y. 2001) ("The majority of courts that have addressed this question [of whether a settlement agreement effectuates a novation and extinguishes the underlying claims for fraud] reach the . . . conclusion . . . that in bankruptcy, a court should look beyond a settlement agreement to determine whether or not the debt is in fact based on fraud."), *aff'd and remanded*, 326 F.3d 319 (2d Cir. 2003). Thus, the Defendant's attempt to characterize the Judgment as a mere breach of contract claim is unpersuasive.

Second, the Defendant's reading of Section 523(a)(15) is "too myopic." *Lustgarten v. Vann (In re Vann)*, Bankr. No. 13-51364, Adv. No. 13-5045, 2014 WL 505257, at *3 (Bankr. D. Conn. Feb. 6, 2014). Section 523(a)(15) is broader than the Defendant's interpretation because it addresses debts incurred "in the course of a divorce or separation *or in connection with* a separation agreement, divorce decree or *other order of a court of record*." *Id.* (quoting 11 U.S.C. § 523(a)(15)). Although the Stipulation was not merged into the Judgment of Divorce, the Judgment of Divorce clearly directed the parties to comply with all legally enforceable provisions of the Stipulation as if they were entirely set forth in the Judgment of Divorce. The Judgment debt was incurred precisely in connection with the Stipulation resolving the Divorce Action because the damages were awarded based on the terms of the Stipulation itself.

In this respect, the Court agrees with the Plaintiff that Judge Eisenberg's analysis in *Golio* is on point. There, the debtor and his former spouse entered into a stipulation of settlement, which was incorporated into the divorce decree. *Golio*, 393 B.R. at 57. The stipulation, among other things, set forth the debtor's child support obligations as well as required the debtor to vacate the marital residence by a certain day or pay the plaintiff $150 per day in the event he failed to do so. *Id.* at 58. The parties also agreed to indemnify and hold each other harmless for any expenses and damages, including attorney's fees and litigation expenses, resulting from a breach of the stipulation. *Id.* Subsequently, the debtor breached, and the plaintiff sought to enforce the stipulation and the divorce judgment. *Id.* at 59. Ultimately, the plaintiff obtained two judgments— one for the child support arrearage and the distributive award pursuant to the "$150/day" provision and one for legal fees and costs in connection with the enforcement of the divorce judgment. *Id.* at 59-60. In finding that the judgments fell within the nondischargeability exception of Section 523(a)(15), Judge Eisenberg held that the two judgments were "clearly awarded by the state court in connection with a divorce decree and to enforce prior orders of the state court concerning the [p]laintiff's rights and remedies under the [d]ivorce [j]udgment" because they were awarded "as agreed upon by the parties in the [s]tipulation of [s]ettlement and as set forth in the [d]ivorce [j]udgment." *Id.* at 62.

Here, the parties' Stipulation, incorporated but not merged into the Judgment of Divorce, like *Golio*, imposed certain obligations on the Defendant, such as not to assist Deborah in bringing an action with respect to the Continental Apartment; to indemnify the Plaintiff for the costs if such an action is commenced; and to reimburse the Plaintiff for legal fees and expenses in the event the Defendant breaches the Stipulation. The State Court conclusively established that the Defendant breached the Stipulation by locating and paying for Deborah's attorney who then commenced an

action against the parties. This, in turn, gave rise to the award of damages consisting of the lost equity in the Continental Apartment due to the delay caused by Deborah's Action, legal fees spent on defending the action, and legal fees spent on defending the State Court Action and enforcing the Stipulation. Like in *Golio*, the State Court awarded damages as agreed upon by the parties and as set forth in the Stipulation and the Judgment of Divorce. *Id.* Under these circumstances, it is clear that the Judgment, which merely assigned the dollar value to the Plaintiff's claim for breach of the Stipulation incorporated in the Judgment of Divorce, was incurred "in connection with a separation agreement, divorce decree or other order of a court of record." 11 U.S.C. § 523(a)(15).

Contrary to the Defendant's argument, the plain reading of the statute does not limit its applicability only to payments of alimony and property distribution. Rather, the statute applies to *any* debt in connection with such a divorce or separation agreement, which includes obligations arising out of indemnification and fee-shifting provisions. Further, this interpretation aligns with the public policy promoted by Congress. Separation agreements are often complex and include a myriad of provisions settling various domestic relations and property rights of the divorcees. All provisions should be considered jointly since even a non-support, non-proprietary promise (such as a promise to refrain from doing something) made in a separation agreement by one party could be a part of the consideration that caused the other party to agree to a certain proprietary concession. Cherry-picking which provisions of a divorce or separation settlement fall within the Section 523(a)(15) exception would go against "Congress's recognition that the economic protection of dependent spouses and children under state law is no longer accomplished solely through the traditional mechanism of support and alimony payments." *Golio*, 393 B.R. at 61.

In fact, accepting the Defendant's narrow reading of the statute could lead to troubling results. Potentially, it would incentivize a party to extinguish her otherwise nondischargeable

obligation by breaching it, which, under the Defendant's interpretation, would transform the obligation into a dischargeable one. In other words, if a judgment enforcing an obligation under a separation agreement can be discharged (since, under the Defendant's reading, such a judgment would be merely a breach of contract debt), a debtor-party to such an agreement would have little to no reason to perform. Such a result certainly does not align with Congress's intent "to cover any matrimonial debts that 'should not justifiably be discharged.'" *LaVergne*, 2011 WL 1878093, at *3 (quoting *In re Crosswhite*, 148 F.3d 879 (7th Cir.1998)).

Lastly, this Court notes that the Stipulation contains various provisions relating to any future bankruptcy filing by either party and the effect such filing may have on the parties' rights and obligations under the Stipulation. Specifically, the Stipulation provides that "[n]o claim, whether for maintenance, support, property distribution, *or otherwise*, arising out of this Agreement shall be dischargeable in bankruptcy, but any such claim shall survive the filing of any bankruptcy petition . . . until this Agreement is fully performed and discharged according to its terms." (Bijan Aff. Ex. A, at § 10.1 (emphasis added).) However, "a majority of courts have held that a prepetition waiver of discharge is against public policy and cannot be enforced." *Tamasco v. Nicholls (In re Nicholls)*, Bankr. No. 10-70650-DTE, Adv. No. 10-8186-DTE, 2010 WL 5128627, at *2 (Bankr. E.D.N.Y. Dec. 10, 2010) (citing cases); *see also EFS Inc. v. Mercer (In re Mercer)*, Bankr. No. 13-30006-WRS, Adv. No. 13-3031-WRS, 2013 WL 3367253, at *4 (Bankr. M.D. Ala. July 5, 2013) ("It is well established that prepetition stipulations of nondischargeability are not enforceable.") (citing cases). On the other hand, a bankruptcy court may give effect to stipulated facts, if any, underlying the claim in the context of determining whether the debt is nondischargeable. *See Nicholls*, 2010 WL 5128627, at *3. In any event, this Court need not address the enforceability of Section 10.1 of the Stipulation because, as explained above, the relevant facts

in this matter are undisputed and the debt arising from the Judgment satisfies the standard for nondischargeability under Section 523(a)(15).

## CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is denied, and the Plaintiff's cross-motion for summary judgment is granted. A separate order and judgment will issue.



Dated: August 17, 2022  
Brooklyn, New York

Nancy Hershey Lord  
United States Bankruptcy Judge